Chris Haliburton v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-008-CR

     CHRIS HALIBURTON,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 94-81-C
                                                                                                                

O P I N I O N
                                                                                                                

      Appellant Chris Haliburton pleaded guilty in 1994 to unauthorized use of a motor vehicle,
then a third degree felony.


 See Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, sec. 31.07,
1973 Tex. Gen. Laws 883, 932 (amended 1993) (current version at Tex. Pen. Code Ann. § 31.07
(Vernon 1994)). Pursuant to a plea agreement, the court sentenced him to four years’
imprisonment and a $400 fine, suspended imposition of sentence, and placed him on probation for
four years. Three months before his probationary term would have expired, the State filed a
motion to revoke Haliburton’s probation. The State subsequently filed an amended revocation
motion.
      Haliburton pleaded “true” to one of the five allegations in the amended motion and “not true”
to the remaining allegations. The court heard the motion in conjunction with the trial of two
burglary offenses also alleged as bases for revocation (two of the four allegations to which he
pleaded “not true”). After the jury convicted Haliburton of one of the burglaries and acquitted
him of the other, the court revoked his probation and imposed the original sentence.
      Haliburton’s appellate counsel filed a motion to withdraw with a supporting Anders brief. See
Anders v. California, 386 U.S. 738, 744, 87 S. Ct. 1396, 1400, 18 L. Ed. 2d 493 (1967). We
notified Haliburton that he had the right to respond to counsel’s motion and brief, but he has not
done so. See Wilson v. State, 955 S.W.2d 693, 696-97 (Tex. App.—Waco 1997, order). We now
decide “whether the case is wholly frivolous” as claimed by counsel. See Taulung v. State, 979
S.W.2d 854, 855 (Tex. App.—Waco 1998, no pet.) (quoting Anders, 386 U.S. at 744, 87 S. Ct.
at 1400).
      The amended revocation motion contains five allegations. One is that Haliburton violated the
conditions of his probation by committing the offense of possession of marihuana. Haliburton
pleaded true to this allegation.
      Counsel does not list potential issues in his brief. See, e.g., Coronado v. State, No. 10-98-188-CR, slip op. at 3-4, 1999 WL 371271, at *2 (Tex. App.—Waco June 9, 1999, order) (per
curiam). Rather, counsel analyzes the record and reviews the original plea proceedings,
Haliburton’s arraignment on the amended revocation motion, and the hearing on the motion. After
reviewing each of these areas, counsel concludes that no errors of arguable merit are shown. See
Taulung, 979 S.W.2d at 858.
      We have reviewed the record and agree with counsel that no error of arguable merit is shown. 
Id. Furthermore, in light of Haliburton’s plea of “true” to the allegation that he had possessed
marihuana, we conclude that the court did not abuse its discretion in revoking his probation. See
Stevens v. State, 900 S.W.2d 348, 350 (Tex. App.—Texarkana 1995, pet. ref’d) (proof of a single
violation sufficient to revoke probation).
      We have concluded that the court did not abuse its discretion in revoking Haliburton’s
probation and no errors of arguable merit are shown. Accordingly, we grant counsel’s motion to
withdraw and affirm the judgment.
                                                                               PER CURIAM


Before Chief Justice Davis
      Justice Vance and
      Justice Gray
Affirmed
Opinion delivered and filed August 11, 1999
Do not publish



’s alleged promise to loan the additional money because: (1) it entered a $1.375 million
drilling contract to begin drilling operations in New Mexico; (2) it commenced the four
recompletion projects at a cost of $187,500; and (3) the ALMAC loan to fund these operations
carried “a substantially higher interest rate” than the Bank had allegedly promised.
      Under the negligent misrepresentation allegations, UHC asserts that it sustained economic
and actual damages as a result of the Bank’s alleged misrepresentation. Mize separately
alleges that “he suffered pecuniary loss” as a proximate cause of his reliance on the alleged
misrepresentation. Mize alleges that he agreed to execute a second pledge agreement because
of the alleged misrepresentation. However, it is undisputed that he never did so.
      Nowhere in the petition does Mize specifically allege the nature of the pecuniary loss he
personally suffered. He provided testimony in the injunction hearing to describe the pecuniary
losses he contends he has suffered as a result of the alleged misrepresentation. He testified that
“all [his] personal funds are tied up in that ALMAC note” because UHC has not repaid the
loan. In addition, he testified that, if the Bank forecloses, UHC would probably have to offer
additional shares to raise revenue and he would lose his status as majority shareholder.
      The only injuries alleged in connection with the DTPA claim are injuries to UHC. Mize
does not have standing in his individual capacity to assert this claim on behalf of UHC. See
City of Laredo v. R. Vela Exxon, Inc., 966 S.W.2d 673, 679 (Tex. App.—San Antonio 1998,
pet. denied); El T. Mexican Rests., Inc. v. Bacon, 921 S.W.2d 247, 251 (Tex. App.—Houston
[1st Dist.] 1995, writ denied); see also Wingate v. Hajdik, 795 S.W.2d 717, 719 (Tex. 1990)
(“A corporate stockholder cannot recover damages personally for a wrong done solely to the
corporation, even though he may be injured by that wrong.”).
      Nor does Mize have standing to assert the negligent misrepresentation claim. Mize’s
contention that his liquid assets are “tied up” does not state a pecuniary loss. Rather, it
reflects his own decision to convert $1 million into the form of a note payable to him by
ALMAC. We hold as a matter of law that the potential diminution of his ownership interest in
UHC in the event of foreclosure is not actionable because that too reflects his own decision in
April 2000 to put his ownership interest at risk by pledging the stock certificate as collateral
for UHC’s note.
      These “injuries” were not caused by the Bank’s refusal to loan UHC additional money. 
Rather, they were caused by Mize’s actions in response to: (1) the need for collateral to secure
the original loan; and (2) the need for additional funds to finance the drilling operation in New
Mexico and the recompletion projects. Accordingly, Mize’s alleged injuries are not “fairly
traceable” to the Bank’s refusal to loan UHC additional money. See McConnell, ___ U.S. at
___, 124 S. Ct. at 709.
      The Bank’s third issue is sustained. We need not address the remainder of the Bank’s
issues. See Tex. R. App. P. 47.1.
      We reverse the order granting the temporary injunction, dissolve the injunction, and
remand this cause to the trial court with instructions to dismiss Mize’s claims for want of
jurisdiction. See Warren v. Aldridge, 992 S.W.2d 689, 691 (Tex. App.—Houston [14th Dist.]
1999, no pet.); Letson v. Barnes, 979 S.W.2d 414, 419 (Tex. App.—Amarillo 1998, pet.
denied).
 
                                                                   FELIPE REYNA
                                                                   Justice

Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna
      (Chief Justice Gray concurring)
Reversed and remanded
Opinion delivered and filed May 12, 2004
[CV06]